IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

_____
                                :

CHARLES F. BURDGE           :    CIVIL ACTION NO.
PITTSTOWN, NJ 08867      :
                                  :
               Plaintiff,   :
    v.                           :
                                  :
VERIZON CORP RSRCS GROUP LLC  :    JURY TRIAL DEMANDED
One Verizon Way          :
Basking Ridge, NJ 07920    :
                                  :
               Defendant.  :
_____:

## COMPLAINT

### INTRODUCTION

Defendant, Verizon Corp RSRCS Group LLC ("Verizon), including its affiliated companies, is engaged in an intentional campaign to replace its older workforce with younger employees. Plaintiff, Charles F. Burdge, a sixty-one year old risk management professional who had worked effectively and diligently for Verizon for over a decade, is just one casualty of Verizon's discriminatory campaign. After forcing Mr. Burdge to apply for his own position in order to retain his employment at Verizon as part of a purported "Transformation" of the Company, Verizon notified Mr. Burdge that his employment would be terminated before it had even identified the substantially younger external candidate who would be hired to replace him.

Verizon claims that Mr. Burdge was not qualified for his own job and/or the other jobs to which he had applied in connection with the "Transformation." Verizon's assertion is based on nothing more than blatant age-based stereotypes that had nothing to do with Mr. Burdge's extensive experience in the industry or his actual performance. Verizon's intentional age discrimination against its older workers, including Mr. Burdge, clearly violates the Age

Discrimination in Employment Act, as amended, 29 U.S.C. §623 *et seq*. ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. §10:5-1, *et seq*. ("NJLAD"). Mr. Burdge filed this lawsuit to hold Verizon accountable for its discriminatory conduct.

<u>PARTIES</u>

1.      Plaintiff, Charles F. Burdge, is an adult individual and a citizen of the State of New Jersey. Mr. Burdge resides in Pittstown, NJ 08867.

2.      Mr. Burdge's date of birth is August 3, 1956.

3.      Defendant, Verizon Corp RSRCS Group LLC ("Verizon"), is a New Jersey Corporation headquartered at One Verizon Way, Basking Ridge, New Jersey.

4.      Verizon is engaged in an industry affecting commerce and regularly does business in the state of New Jersey.

5.      At all times material hereto, Mr. Burdge worked out of Defendant's Basking Ridge, New Jersey location.

6.      At all times material hereto, Verizon employed fifteen (15) or more employees.

7.      At all times material hereto, Verizon acted by and through authorized agents and/or employees acting within the course and scope of their employment and in furtherance of Verizon's business.

8.      At all times material hereto, Verizon was an employer within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Mr. Burdge was an employee of Verizon within the meaning of the statutes which form the basis of this matter.

2

## JURISDICTION AND VENUE

10.     The causes of action which form the basis of this matter arise under the ADEA and the NJLAD.

11.     This Court has jurisdiction over Count I (ADEA) pursuant to 28 U.S.C. §1331.

12.     This Court has supplemental jurisdiction over Count II (NJLAD) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in this district court pursuant to 28 U.S.C. §1391(b) because the actions complained of herein occurred within the jurisdictional limit of this Court.

14.     On or about August 27, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

15.     On or about September 24, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Rights. Attached hereto, incorporated herein, and marked as "Exhibit 2" is a true and correct copy of that Notice.

16.     Mr. Burdge has fully complied with all administrative prerequisites for the commencement of this action.

## FACTUAL ALLEGATIONS

Burdge's Extensive Experience Prior To Verizon

17.     Mr. Burdge began his career at Continental Insurance Company as an insurance adjuster in 1979, where he was promoted to Senior Field Adjuster in 1985.

3

18.     Starting in 1988, Mr. Burdge's role at Continental expanded to include supervision of several claims departments, including General Liability, Bodily Injury, and Property.

19.     Over the next decade at Continental, Mr. Burdge supervised between eight to sixteen employees in the claims department.

20.     In 1994, CNA Insurance purchased Continental, and Mr. Burdge's job responsibilities remained the same for his new employer.

21.     In 1999, CNA closed the claims office in New Jersey where Mr. Burdge worked, and offered him the option to relocate to Boston or resign with severance pay. Mr. Burdge chose not to relocate his family, and left his employment with CNA.

22.     Soon thereafter, Mr. Burdge accepted a position with Wausau Insurance as National Claims Manager for commercial claims, which was located in West Orange, New Jersey.

23.     When Wausau announced its intent to close its West Orange office in the summer of 2000, Mr. Burdge obtained a position at Western World Insurance in Franklin Lakes, New Jersey, where he was responsible for commercial claims, including commercial property claims arising out of Hurricane Katrina.

24.     After several years of commuting a significant distance to Franklin Lakes, Mr. Burdge sought out new employment closer to home.

Burdge's Employment At Verizon Prior to 2017

25.     Verizon hired Mr. Burdge as a Claims Consultant in June 26, 2006, a position located at the Company's Basking Ridge, New Jersey location.

4

26.     As a Claims Consultant, Mr. Burdge was initially responsible for managing General Liability and Auto Liability claims for Verizon in the Mid-Atlantic region.

27.     In 2012, Mr. Burdge obtained his designation as a Certified Litigation Management Professional from the Litigation Management Institute at Columbia Law School.

28.     By June 2016, Mr. Burdge had responsibility to manage General Liability and Auto Liability claims on a nationwide basis, excluding New York.

29.     At that time, Derek Nehil (then age 35) had responsibility to manage General Liability claims in New York state.

30.     Mr. Burdge and Mr. Nehil both reported to William McCullough, who was promoted to Director of Claims in October 2016.

31.     In addition to supervising Mr. Burge and Mr. Nehil, Mr. McCullough also supervised a Manager and two claims consultants who handled Verizon's Workers' Compensation claims, and a Manager responsible for Property claims.

32.     Throughout his employment at Verizon, Mr. Burdge met or exceeded all performance objectives identified for him, and he received positive feedback and performance evaluations.

Verizon's Purported Business Transformation

33.     Verizon implemented a purported business "Transformation" in its Treasury organization starting in October 2017. The Claims Department, headed by Mr. McCullough, was part of the Risk Management group, which in turn was part of Treasury.

5

34.     As of October 2017, David Cammarata was Verizon's head of Risk Management. Mr. Cammarata's background and experience is in accounting and audit functions, and not claims management.

35.     In connection with the business "Transformation" in Risk Management, Verizon notified all incumbent employees that their jobs would be "repurposed" and they would have to apply for "new" roles if they wanted to continue their employment at Verizon.

36.     The Verizon employees included in the "Transformation" also had the option not to apply for any jobs, and leave the Company with severance pay.

37.     Verizon's purported business "Transformation" within the Treasury organization, and across the company, is part of its pattern and practice of discriminating against older workers in order to replace older employees with younger employees.

38.     Verizon's implementation of its business "Transformation," in which its employees are required to reapply for their own jobs despite meeting all articulated performance objectives, is one of the vehicles by which the company seeks to meet its goal of employing a younger workforce.

<u>Verizon's Additional Pattern and Practice Of Age Discrimination</u>

39.     In addition, Verizon has invested significantly in job advertisements targeted to younger job applicants to replace the older workers whom it is terminating as part of its business transformations.

40.     Verizon's targeted advertising to younger job applicants was and is part of its pattern and practice of age discrimination.

6

41.     In late 2018, Verizon offered an enhanced "voluntary severance" program to 44,000 of its employees, the benefits of which are based on years of service. Close to 10,400 employees "volunteered" for the severance program, which Verizon designed to appeal to long term, older employees.

42.     Verizon's voluntary severance program was and is part of its pattern and practice of age discrimination.

Implementation of The "Treasury Transformation" In The Claims Department

43.     Prior to communicating the details of the "Treasury Transformation," Verizon announced that it would not impact individuals employed at the level of Director or above, such as Mr. Cammarata or Mr. McCullough.

44.     At the time the "Transformation" was announced, Verizon employed the following six (6) individuals in the Claims Department reporting into Mr. McCullough:

        a.      Mr. Burdge (age 61) – Claims Consultant, General Liability and Auto (Nationwide, other than New York), who reported directly to Mr. McCullough;

        b.      Mr. Nehil (age 36) – Claims Consultant, General Liability and Auto (only New York), who reported directly to Mr. McCullough;

        c.      Jack Neyer (age 56) – Manager, Workers' Compensation Claims, who reported directly to Mr. McCullough;

        d.      Adria Correa (age 58) – Workers' Compensation Specialist, who reported to Mr. Neyer;

        e.      Patricia Whittaker (age 65) - Workers' Compensation Specialist, who reported to Mr. Neyer; and

      f.      Tom Ziegler (age 67) – Manager, Property Loss Control, who reported directly to Mr. McCullough.

45.      Following the "repurposing" of the roles within the Claims Department, Verizon posted five (5) roles: (1) Claims Manager (General, Auto, and Workers' Compensation); (2) Claims Manager (All other claims); (3) Consultant (General and Auto); (4) Consultant (Workers' Compensation); and (5) Consultant (Workers' Compensation).

46.      The Claims Manager (General, Auto, and Workers' Compensation) role required the successful candidate to supervise the three Consultants in the group, one who would be assigned to General Liability and Auto Liability and two who would be assigned to Workers' Compensation.

47.      The Claims Manager (All other claims) role required the successful candidate to manage outside vendors, but did not require supervision of any internal direct reports.

48.      As part of the "Transformation" within Treasury, Verizon advised Mr. Burdge that he would have to apply for his own job and/or other positions to remain employed following the "Transformation."

49.      Verizon posted Mr. Burdge's position under a new title: Consultant, Treasury Claims on or about November 14, 2017.

50.      Despite the new title, the "Consultant, Treasury Claims" position posted by Verizon was the same as the "Claims Consultant" position Mr. Burdge held for over eleven (11) years.

51.     On or about November 17, 2017, Mr. Burdge applied for three (3) positions in the Claims Department: (1) Claims Manager (General, Auto, and Workers' Compensation); (2) Claims Manager (All other claims); and (3) Consultant (General and Auto).

52.     Mr. Burdge had the qualifications for all three of the positions for which he applied.

53.     Mr. Neyer, Ms. Whittaker, and Mr. Ziegler all decided not to apply for their positions and retired from Verizon with severance pay.

54.     Ms. Correa applied for one of the Consultant (Workers' Compensation) roles.

55.     In or around late-November/early-December 2017, Mr. Cammarata, Mr. McCullough, and Mark Denesevich (age 60), Director of Risk Management, interviewed Mr. Burdge for the Manager positions to which he applied.

56.     Around the time the "Transformation" was announced, and before interviewing Mr. Burdge for the repurposed positions, Mr. Cammarata shared that he believed he had been rejected for job opportunities outside of Verizon for which he was qualified because of his age.

57.     On or about December 21, 2017, during a discussion of a candidate who had been interviewed by Mr. Denesevich and James Beckert (age 56), Executive Director of Pension Benefits, Mr. Beckert told his colleague that the candidate's age would prevent him from being selected for the position even though he was a good candidate.

58.     In late December 2017, Mr. Nehil told Mr. Burdge that he (Mr. Nehil) had been offered the position of Claims Manager (General, Auto and Workers' Compensation), but asked that Mr. Burdge keep that information secret.

9

59.     On or about January 2, 2018, Verizon officially notified Mr. Burdge that he had been rejected for the position of Claims Manager (General, Auto and Workers' Compensation).

60.     Mr. Burdge was more qualified than Mr. Nehil for the Claims Manager (General, Auto and Workers' Compensation) position.

61.     Verizon selected Mr. Nehil rather than Mr. Burdge for the Claims Manager (General, Auto and Workers' Compensation) position because Mr. Nehil is substantially younger than Mr. Burdge, and not for any legitimate business reason.

62.     On or about February 6, 2018, Verizon notified Mr. Burdge that he had been rejected for the position of Claims Manager (All other claims).

63.     Verizon selected Edward Solovay (46) for the Claims Manager (All other claims) position.

64.     Mr. Burdge was more qualified than Mr. Solovay for the Claims Manager (All other claims) position.

65.     Verizon selected Mr. Solovay rather than Mr. Burdge for the Claims Manager (All other claims) position because Mr. Solovay is substantially younger than Mr. Burdge, and not for any legitimate business reason.

66.     In early January 2018, Mr. Nehil advised Mr. Burdge that there had been a lack of qualified candidates who had applied for his position, and that at least three candidates had to be interviewed before an offer would be made.

67.     On February 12, 2018, Verizon re-posted Mr. Burdge's former position with a new title: "Lead Financial Analyst – Treasury Claims." The job description and the job requisition number for this new posting were identical to the prior posting other than the title.

68.     In or about mid-February 2018, Mr. McCullough delivered Mr. Burdge's performance review for 2017, in which he rated Mr. Burdge as meeting or exceeding all job requirements.

69.     During the review meeting, Mr. McCullough also advised Mr. Burdge that he would be assigned all of Mr. Nehil's prior responsibilities since he had been promoted.

70.     Prior to that date, and throughout 2017, Mr. Burdge's job responsibilities had expanded to include, for example: managing claims generated as a result of Verizon's acquisition of Yahoo, AOL, and XO Communications; managing Verizon's aviation program and OCIP (Owner Controlled Insurance Program); and managing claims related to Verizon's roll out of its 5G cell service.

71.     On March 12, 2018, Verizon advised Mr. Burdge in a meeting with Mr. McCullough and Kristin Bisignano (31), Human Resources Manager, that his employment with Verizon would be terminated, effective July 13, 2018. The only reason provided by Verizon for terminating Mr. Burdge's employment was that it was "going in a different direction."

72.     At that point, Mr. Burdge was qualified to continue doing his own job of Claims Consultant for General Liability and Auto.

73.     Upon information and belief, even though it notified Mr. Burdge that his employment would be terminated, Verizon had not identified any potential candidates for the Claims Consultant position responsible for General Liability and Auto (Mr. Burdge's role).

74.     Verizon made the decision to terminate Mr. Burdge's employment rather than retaining him in the Claims Consultant role – or even letting him compete against potential candidates – because of his age.

75.     On or about April 23, 2018, after notifying Mr. Burdge of his imminent termination from employment, Mr. McCullough asked him whether he was eligible for a "retirement package." Mr. Burdge confirmed that he was not eligible for any benefits other than the standard severance package (24 weeks of pay) upon his termination from employment.

76.     In the same discussion, Mr. McCullough told Mr. Burdge that they were getting close to hiring his replacement.

77.     On or about May 2, 2018, Verizon selected an external candidate, Michael Park (age 42), for the Claims Consultant position.

78.     On or about May 17, Verizon notified Mr. Burdge that his replacement had been hired.

79.     Mr. Burdge was more qualified than Mr. Park for the Claims Consultant role.

80.     Verizon selected Mr. Park rather than Mr. Burdge for the Claims Consultant role because Mr. Park is substantially younger than Mr. Burdge, and not for any legitimate business reason.

81.     Mr. Burdge spent the last several months of his employment at Verizon training Mr. Park to perform his job duties.

82.     By letter dated June 14, 2018, Verizon officially notified Mr. Burdge that his employment would be terminated on July 13, 2018, if he was unable to secure a new position prior to that date.

83.     In connection with the termination of Mr. Burdge's employment, Verizon instructed him that he was required to sign a "Severance Agreement and Release" in order to

receive severance pay benefits pursuant to the Verizon Severance Program for Management Employees.

84.     Pursuant to the contents of the Severance Agreement and Release, Mr. Burdge was required to release all employment-related claims against Verizon in order to get his severance pay benefits, including claims for age discrimination under the ADEA.

85.     However, the Severance Agreement and Release and corresponding "Older Workers Benefit Protection Act Report" did not comply with the legal requirements of the Older Workers Benefits Protection Act ("OWBPA"), contained misstatements of fact, and were intended by Verizon to harm workers age 40 and over.

86.     Verizon's use of its Severance Agreement and Release along with an "Older Workers Benefit Protection Act Report" that did not comply with the law, yet purported to require a release of age discrimination claims under the ADEA, was part of the Company's pattern and practice of age discrimination.

87.     Mr. Burdge did not sign the Severance Agreement and Release.

88.     Mr. Burdge's employment at Verizon terminated on July 13, 2018.

89.     Verizon claims that it terminated Mr. Burdge's employment, rather than selecting him for any of the "repurposed" jobs in the Claims Department, because the candidates selected for those positions were more qualified than he was, and because Mr. Burdge allegedly did not have the "technical skills" or the "vision" required for the future of the group.

90.     Verizon's stated reasons for failing to select Mr. Burdge for any of the three (3) positions for which he applied are false and are a pretext for age discrimination.

91.     Mr. Burdge's age was a motivating and determinative factor in Verizon's failure to select him for any of the three (3) positions for which applied.

92.     Mr. Burdge's age was a motivating and determinative factor in Verizon's decision to terminate his employment.

93.     Verizon's discriminatory actions were willful and warrant the imposition of liquidated damages.

94.     Verizon's discriminatory actions were intentional and implemented with malice and/or a reckless indifference to Mr. Burdge's civil rights and warrant the imposition of punitive damages.

95.     As a direct and proximate result of Verizon's discriminatory conduct, Mr. Burdge has incurred, and continues to incur, a loss of earnings and/or earning capacity, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

<u>COUNT I</u>

Age Discrimination in Violation of the
<u>Age Discrimination in Employment Act (ADEA)</u>

96.     Plaintiff incorporates herein by reference the foregoing paragraphs as if set forth herein in their entirety.

97.     By committing the foregoing acts of discrimination against Plaintiff, Defendant violated the ADEA.

98.     Defendant's violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

14

99.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein, and has incurred attorneys' fees and costs.

100.    No previous application has been made for the relief requested herein.

## COUNT II

### Age Discrimination in Violation of the
### New Jersey Law Against Discrimination (NJLAD)

101.    Plaintiff incorporates herein by reference the foregoing paragraphs as if set forth herein in their entirety.

102.    By committing the foregoing acts of discrimination against Plaintiff, Defendant violated the NJLAD.

103.    Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

104.    As a direct and proximate result of Defendant's violation of the NJLAD, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorneys' fees and costs.

105.    No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

A.      Declaring the acts and practices complained of herein to be a violation of the ADEA;

B.     Declaring the acts and practices complained of herein to be in violation of the NJLAD;

C.     Entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

D.     Enjoining and restraining permanently the violations alleged herein;

E.     Awarding  compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful misconduct;

F.     Awarding liquidated damages;

G.     Awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

H.     Awarding punitive damages;

I.     Awarding Plaintiff costs of this action, together with reasonable attorneys' fees;

J.     Awarding Plaintiff such other damages as are appropriate under the ADEA and the NJLAD; and

K.     Granting such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on each of the Counts in this Complaint.


CONSOLE MATTIACCI LAW, LLC


BY: _____

Stephen G. Console, Esquire (No. 040281983)
Laura C. Mattiacci, Esquire (No. 017892002)
Julie A. Uebler, Esquire (No. 255212017)
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
uebler@consolelaw.com

Attorneys for Plaintiff
Charles F. Burdge

# EXHIBIT 1

| **CHARGE OF DISCRIMINATION**<br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | **AGENCY**<br>Q  FEPA<br>X  EEOC | **CHARGE NUMBER** |
|---|---|---|
| STATE OR LOCAL AGENCY: | | |

| NAME (Indicate **Mr.**, Ms., Mrs.)<br>**Charles Burdge** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Pittstown, NJ  08867 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Verizon;**<br>**Verizon Corporate Resources Group LLC** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(800) 932-7947 |
|---|---|---|
| STREET ADDRESS<br>One Verizon Way | CITY, STATE AND ZIP<br>Basking Ridge, NJ 07920 | COUNTY<br>Somerset |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  Q Color  Q Sex   Q Religion   Q National Origin<br>Q Retaliation   **X** Age  Q Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*          *Latest*  07/13/2018 |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondent on or about June 26, 2006.  I last held the position of Claims Consultant.  I last reported to William McCullough (55ª), Director, Claims Management.  McCullough reported to David Cammarata (55), Assistant Treasurer.

Respondent terminated my employment on July 13, 2018.  I was age sixty-one (61) with more than twelve (12) years of service at Respondent.  Respondent failed to select me for open positions for which I was qualified and had applied, and terminated my employment, because of my age.  Respondent replaced me with a substantially younger employee, selected substantially younger employees for positions for which I had applied and was more qualified, and retained substantially younger employees when I was terminated.

I consistently demonstrated excellent performance and dedication to Respondent.  I performed my duties in a highly competent manner, and received positive feedback and performance evaluations.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | |
| Date:                    Charging Party (*Signature*):<br><br>*8/27/18*<br><br>*Charles F Burdge* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

---

ª All ages herein are approximations.

EEOC Charge of Discrimination
Page 2 of 4
Initials of Charging Party –

2.      Harm Summary

I have been discriminated against because of my age (61).  Evidence of the discriminatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)  At the time of my termination, I was the oldest employee that directly reported to McCullough.

(b)  At the time of my termination, I was one of the oldest employees that indirectly reported to Cammarata.

(c)  In addition to me, Derek Nehil (35), Claims Manager, directly reported to McCullough.

(d)  On or about October 27, 2017, Cammarata told me that he had been denied positions at Respondent, for which he had applied and was qualified, because of his age.

(e)  On or about November 14, 2017, Respondent instructed me to reapply for my position, or other open positions, if I wanted to remain employed with Respondent.

(f)  On or about November 14, 2017, Respondent posted my position and changed the title to Consultant, Treasury Claims.

(g)  On or about November 17, 2017, I applied for the following positions, all of which I was qualified for, to remain employed with Respondent: Manager, Treasury Claims; Manager, Treasury Claims; Consultant, Treasury Claims.

(h)  I was interviewed for the three (3) positions for which I had applied and was qualified. McCullough, Cammarata, and Mark Denesevich (56), Director, Risk Management, each interviewed me for the positions.

(i)  On or about December 21, 2017, I heard Denesevich and James Beckert (56), Executive Director, Pensions and Benefits, discussing the age of a candidate they had interviewed.  I heard Beckert state that, although this was a good candidate, the candidate's age would prevent him from being selected for the position.

(j)  On or about January 2, 2018, Respondent failed to select me for the Manager, Treasury Claims position.

(k)  Instead of selecting me, Respondent selected Nehil (35).  I am more qualified and experienced to perform the position than the substantially younger who Respondent selected.

(l)  Respondent provided me with no explanation, including the selection criteria, as to why I was denied the position and the substantially younger employee was selected.

(m)  On or about February 6, 2018, Respondent failed to select me for the Manager, Treasury Claims position.

(n)  Instead of selecting me, Respondent selected Edward Solovay (38).  I am more qualified and experienced to perform the position than the substantially younger who Respondent selected.

(o)  Respondent provided me with no explanation, including the selection criteria, as to why I was denied the position and the substantially younger employee was selected.

EEOC Charge of Discrimination
Page 4 of 4
Initials of Charging Party –

(ff)  Respondent provided me with no explanation, including the selection criteria, as to why I was terminated while the younger employees were retained.

(gg) Respondent terminated and/or pushed out the following employees at the same time Respondent terminated my employment: Thomas Ziegler (67), Manager; Patricia Whittaker (65), Consultant; Russell Griffee (60), Treasury; Peter Neary (60), Finance; Tony Salloum (55), Treasury; Jack Neyer (56), Manager; Daniel Mangan (57), Consultant.

(hh) In Respondent's literature regarding its "Knowledge Management Kickoff Treasury Wave," Respondent stated the following, as a goal: "50% talent refresh as a result of transformation."  I understood Respondent's statement to be discriminatory based on age.

(ii)  Respondent violated the OWBPA in that it did not provide accurate information as required by the ADEA, as amended by the OWBPA.  Instead, Respondent fraudulently advised me, and other terminated workers over age forty (40), that the signing of the release constituted a release of all claims under the ADEA.

B.    1.    Respondent's Stated Reasons

(a)    Respondent has not offered any explanation for failing to select me for positions for which I am qualified, had applied, and was interviewed.  Respondent's failure to retain me or select me for a position for which I am qualified is discriminatory because of my age.

(b)    Respondent's stated reason for terminating my employment, that Respondent was going in a different direction, is pretext for age discrimination and/or a statement made because of my age.

C.    1.    Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my age (61), in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD") as set forth herein.

D.    1.    **Class Charge**

**I bring this Charge as a class and pattern and practice Charge on behalf of myself and any and all current or former employees of Respondent who are age forty (40) and over, and who have been discriminated against based on age in connection with failure to be selected into open positions and/or termination and/or being terminated and presented with a release agreement that fails to comply with the Older Workers Benefit Protection Act (29 U.S.C. § 626(f)), in violation of the ADEA as amended by the OWBPA.**

# EXHIBIT 2

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Charles Burdge**
REDACTED
**Pittstown, NJ 08867**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2018-05587** | **Legal Unit,** <br> **Legal Technician** | **(267) 589-9700** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

09/24/2019

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*

cc:
**Natasha W. Campbell**
**Dir-HR Compliance**
**ONE VERIZON WAY**
**One Verizon Way**
**Basking Ridge, NJ 07920**

**Emily R. Derstine Friesen**
**CONSOLE MATTIACCI**
**1525 Locust Street**
**9th Floor**
**Philadelphia, PA 19102**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Enclosures(s)

cc:   **Matthew W. Lampe**
      **JONES DAY**
      **250 Vesey Street**
      **New York, NY 10281**