**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHARLES F. BURDGE,

Plaintiff,

v.

VERIZON CORPORATE RESOURCES
GROUP LLC,

Defendant.

Civil Action No. 19-19599 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant Verizon Corporate Resources Group LLC's ("Defendant" or "Verizon") Motion for Summary Judgment with respect to age discrimination claims filed against it by a former employee, Plaintiff Charles F. Burdge ("Plaintiff"). (ECF No. 37.) Plaintiff opposed the motion. (ECF No. 46.) Verizon replied. (ECF No. 55.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Verizon's Motion for Summary Judgment is **GRANTED**.

I.     **BACKGROUND**

The material factual circumstances giving rise to this action, and revealed through discovery between the parties, are set forth in the submissions of Plaintiff and Verizon pursuant to Local Civil Rule 56.1. (*See* Verizon's Statement of Material Facts ("Def.'s SOMF"), ECF No. 39; Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. 46-3.)

A.    **Plaintiff's Educational Background, Work History, and Employment at Verizon**

Plaintiff achieved a two-year associate degree. (Def.'s SOMF ¶ 3.) He first worked as a claims adjuster at Continental Insurance in 1979, before working as a claims supervisor at another company from 1988 to 1996. (Def.'s SOMF ¶¶ 4-5; Pl.'s SOMF ¶¶ 1-2.) Between 1996 and 2006, Plaintiff worked as a Senior Liability Adjuster in connection with CNA Insurance's purchase of Continental Insurance, National Account Administrator for Wausau Insurance, and Litigation Specialist for Western World Insurance. (Pl.'s SOMF ¶¶ 2-4.)

In June 2006, Verizon hired Plaintiff into its Claims Group as a Claims Consultant at the age of forty-nine. (Def.'s SOMF ¶ 6; Pl.'s SOMF ¶ 6.) As a Claims Consultant, Plaintiff worked with Verizon's third-party claims administrator to resolve automobile and general liability claims brought by third parties against Verizon. (Def.'s SOMF ¶ 13.) The Claims Group was a part of the Risk Management Department, which also included the Insurance Group and the Captives Group. (*Id.* ¶ 7.) Risk Management was one of several departments within Treasury, and Treasury was part of the Finance Organization. (*Id.* ¶ 8.) In 2011, David Cammarata ("Cammarata") became the Executive Director of Risk Management after working at Verizon for thirty-two years. (*Id.* ¶ 9.)

In 2013, Plaintiff applied for a promotion to an open Claims Manager position. (Def.'s SOMF ¶ 10.) At that time, Cammarata rejected Plaintiff for the role, and instead, he hired William McCullough ("McCullough"). (Pl.'s SOMF ¶ 8.) McCullough, who effectively became Plaintiff's manager, was fifty-four years old at the time of his hiring in this capacity. (Def.'s SOMF ¶¶ 11-12; Pl.'s SOMF ¶ 8.)

B.      **The Treasury Restructuring**

In October 2017, Verizon began the "Treasury Transformation," which was a restructuring that affected all groups within Treasury, including the Claims Group. (Def.'s SOMF ¶¶ 31-32; Pl.'s SOMF ¶ 33.) Based on advice from a third-party consultant, the restructuring was part of a broader reorganization of the entire Finance Organization. (Def.'s SOMF ¶¶ 31-32.) With respect to the Claims Group, the goal of the Treasury Transformation was to "be a better partner to internal organizations and creat[e] efficiencies in the claims management process with automation and better outcomes through increased use of technology and data analytics, such as predictive modeling." (*Id.* ¶ 35.) All manager and below positions in the Claims Group, including Plaintiff's position as Claims Consultant, were eliminated through this transformation process, and then restructured and redesigned to support these objectives. (*Id.* ¶ 40.)

Following the restructuring, the Claims Group included two new Claims Manager positions, and one new Claims Consultant position. Because the Claims Consultant position had three roles, a total of five new positions existed. (*Id.* ¶ 42.) Claims Group employees who elected not to apply for the new roles received severance packages. (*Id.* ¶ 41; Pl.'s SOMF ¶ 49.) Plaintiff, however, applied for the two Claims Manager positions and one Consultant role that he believed was focused on general liability and automobile liability. (Def.'s SOMF ¶ 43; Pl.'s SOMF ¶¶ 61-62.)

As for the two Claims Manager positions, McCullough developed the job descriptions for those newly created roles. (Def.'s SOMF ¶ 46.) Both Claims Manager positions required candidates to have management experience, and critical to the purpose of the Treasury Transformation, Cammarata and McCullough sought candidates with knowledge and experience utilizing technology in a management role. (*Id.* ¶ 47.) Thus, both positions demanded strong

analytical decision-making and collaborative skills, and the proven ability to communicate with leaders and stakeholders. (*Id.* ¶¶ 48, 50.) Specifically, the first Claims Manager position, entitled "Manager – Treasury Claims" (hereinafter "Manager Claims" position), would be responsible for "developing and utilizing process and metrics that will mitigate Verizon's claims exposure by driving efficiency and measuring outcomes," while the second Claims Manager position, entitled "Manager – Treasury," (hereinafter "Manager Treasury" position) would need to "develop[] and execut[e] all claim related analysis and data management activities. . . ." (*Id.* ¶¶ 49, 51.) In addition, the Manager Claims position was to focus on managing workers' compensation, general liability, and auto claims, while the Manager Treasury position was to focus on property, environmental, asbestos, crime, financial and professional, and other insured claims. (*Id.* ¶¶ 48, 50.)

As mentioned above, Plaintiff applied for both manager positions. (*Id.* ¶ 43.) Cammarata, McCullough, and Mark Denesevich ("Denesevich"), the Director of the Captives Group, each interviewed Plaintiff. Verizon, however, maintains that Cammarata and McCullough made the hiring decisions.[1] (*Id.* ¶¶ 52-53.) Rather than hire Plaintiff, Verizon hired two other internal candidates for the manager positions: Derek Nehil ("Nehil") (then age thirty-six) and Edward Solovay ("Solovay") (then age forty-six). (*Id.* ¶¶ 67, 76.)

As for the Claims Consultant position, the Claims Group posted one job requisition that had three roles. (*Id.* ¶ 42.) According to Plaintiff, he only applied for the Consultant position that would have responsibility for auto and general liability claims—not the workers' compensation or analyst role. (*Id.* ¶ 86.) Immediately following his interview of Plaintiff, McCullough took a personal leave of absence. (*Id.* ¶ 102.) Following his return to work, McCullough continued

---

[1] As discussed further, *infra*, in addition to disputing the reason that he was rejected, Plaintiff disputes who at Verizon was responsible for rejecting him for the manager positions and consultant position. (Pl.'s Opp'n Br. 8-9, 14-15, ECF No. 46.)

interviewing candidates and renewed his efforts to identify candidates with the data analytics background, skills, and/or experience desired in the new Consultant position. (*Id.* ¶¶ 103-05.) McCullough managed Plaintiff for approximately three years, and according to McCullough, Plaintiff could not "make the jump to analytics to drive results." (*Id.* ¶ 101.) As such, McCullough informed Plaintiff that he was no longer in contention for the Claims Consultant position. (*Id.* ¶ 108.) Rather, Verizon selected Adria Correa ("Correa") (then age fifty-eight), Alys Onorato ("Onorato") (then age thirty-seven), and Michael Park ("Park") (then age forty-one). (*Id.* ¶¶ 109, 114.) While Correa and Onorato were hired for the workers' compensation-related Consultant positions, Park was hired for the Consultant position that focused on auto and general liability claims. (*Id.*)

In total, Plaintiff was not selected for the manager positions or the Claims Consultant position. (Pl.'s SOMF ¶ 156.) Of the five successful candidates, three were internal hires and three were over the age of forty, including one who was fifty-eight years old. (Def.'s SOMF ¶¶ 44-45.) The parties, however, dispute the reason as to why Plaintiff was not hired for any of the roles. Verizon contends that Plaintiff's lack of qualifications, including minimal management experience, no experience with workers' compensation claims, and no proven experience utilizing technology or data analytics to manage claims resulted in the company's decision to reject Plaintiff's candidacy. (Def.'s Moving Br., 7-8, 13-18, ECF No. 38.) Plaintiff, on the other hand, claims he was terminated based on his age, given that the Treasury Transformation resulted in a reduction of the average age of the employees reporting to Cammarata from fifty-two years old to forty-four years old. (Pl.'s Opp'n Br. 1.)

C.     **Plaintiff's Termination and Commencement of this Lawsuit**

Plaintiff's employment with Verizon ended in July 2018, when he was sixty-one years old. (Def.'s SOMF ¶ 30.) During his tenure with the company, Plaintiff held only the Claims Consultant position and worked only in the Claims Group. (*Id.* ¶ 29.)

On August 27, 2018, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*See* Compl. ¶ 14, ECF No. 1.) The EEOC subsequently issued Plaintiff a Notice of Right to Sue on September 24, 2019. (*Id.* ¶ 15.)

On October 31, 2019, Plaintiff filed a two-count Complaint, asserting the following causes of action: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and (2) age discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.* (*Id.* ¶¶ 96-105.) Following discovery, Verizon moved for summary judgment on both counts. (*See generally* Def.'s Moving Br.) Plaintiff opposed the motion. (*See generally* Pl.'s Opp'n Br.) Verizon replied. (*See generally* Def.'s Reply Br., ECF No. 55.)

## II.     <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See*

6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine [dispute] as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

## III.  **DISCUSSION**

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the NJLAD provides that it is unlawful for an employer to discharge any individual because of such individual's age. N.J. Stat. Ann. § 10:5–12; *see also id.* § 10:5–4 (recognizing opportunity to obtain employment "without discrimination because of . . . age" as a civil right). "Age discrimination claims under the ADEA and [NJ]LAD are governed by the same standards and allocation of burdens of proof." *Fowler v. AT&T Servs., Inc.*, No. 18-667, 2020 WL 2839461, at *5 (D.N.J. May

31, 2020), *aff'd sub nom.*, *Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021) (quoting *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996)).

In determining whether a plaintiff has stated a viable claim for discrimination when only circumstantial evidence exists, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas*, 411 U.S. at 802-03); *see also Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) ("Specifically, our courts have adopted the burden-shifting framework articulated in *McDonnell Douglas* . . . to prove disparate treatment under [NJ]LAD."). The *McDonnell Douglas* framework requires as follows: (1) a plaintiff first must make a *prima facie* case of discrimination; (2) the burden then shifts to the defendant, who must articulate a "legitimate," "nondiscriminatory reason for its actions," and if defendants satisfy that burden; (3) the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Tourtellotte*, 636 F. App'x at 842.

To prevail on an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-43 (2000)). Direct evidence is evidence which, "if believed, would prove the existence of the fact [in issue] *without inference or presumption*." *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (alteration and emphasis in original) (citation and internal quotation marks omitted). Indirect evidence is such that "the trier of fact must *infer* the discrimination on the basis of age from an employer's remarks." *Id.* (emphasis in original) (citation omitted). To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must

8

show that: (1) he is forty years of age or older; (2) the defendant took an adverse employment action against him; (3) Plaintiff was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Similarly, under the NJLAD, "a plaintiff is required to show that: (1) he belonged to a protected class; (2) the defendant failed to hire him; (3) he was qualified for the position in question; and (4) circumstances giving rise to an inference of discrimination accompanied the failure to hire him." *Landmesser v. Hazelton Area Sch. Dist.*, 574 F. App'x 188, 189 (3d Cir. 2014).

Regarding the last step of the *McDonnell Douglas* framework, a plaintiff must submit evidence which "casts sufficient doubt upon each of the legitimate reasons" that the defendants assert or "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). To make this showing, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Tourtellotte*, 636 F. App'x at 842 (alteration in original) (internal quotations and citations omitted).

Here, Verizon does not contest that Plaintiff was over the age of forty and that he was not hired for either manager position or the Claims Consultant role. (*See generally* Def.'s Moving Br.) Rather, Verizon argues that Plaintiff cannot state a *prima facie* case for unlawful age discrimination because he was not qualified for any of the new positions, nor did Verizon continue to consider other applicants with Plaintiff's same qualifications after he was rejected. (*Id.* at 13-18.)

Moreover, even if the Court finds that Plaintiff demonstrates a *prima facie* case, Verizon maintains that Plaintiff's position disregards the "clear, business-based rationale for the Treasury Transformation," and as such no pretext existed for age discrimination. (*Id.* at 18-30.)

**A.**   ***Prima Facie* Claim**

First, Verizon argues that Plaintiff's claims under the ADEA and the NJLAD fail because he cannot state a *prima facie* claim for age discrimination.

*1.   Claims Manager Positions*

With respect to the manager positions, Verizon argues that Plaintiff was unqualified based on his lack of current or prior relevant management experience and that he cannot establish that the hiring managers continued to consider other applicants with his same qualifications after he was rejected. (Def.'s Moving Br. 13-17.) According to Verizon, these managerial positions required "six or more years of relevant experience with demonstrated leadership opportunities" and a "strong management background." (*Id.* at 13.) Verizon emphasizes, however, that because Plaintiff never held a manager position at Verizon, and because he last held a low-level supervisor role over twenty-five years ago between 1988 and 1996, Cammarata concluded that Plaintiff did not possess the necessary management experience and qualities for either manager position. (*Id.*) Verizon further argues that Plaintiff was unqualified for the Manager Claims position because it required the management of workers' compensation claims and experience utilizing technology to enhance claims management. (*Id.* at 13-14.) Verizon highlights Plaintiff's lack of experience managing workers' compensation claims and notes that Cammarata and McCullough were unaware of any example of Plaintiff attempting to use technology or suggesting the use of technology to drive better claims outcomes. (*Id.* at 14.) Finally, as to the Manager Treasury position, Verizon maintains that the role required the ability to "manage (and minimize) an array

10

of claims, which would be aided by the type of project management-type skills developed with relationships throughout [Verizon]." (*Id.*) Because Plaintiff's work experience, however, was limited to the Claims Group and to general liability and auto claims, Verizon argues that he "did not regularly partner with other groups." (*Id.*)

In response, Plaintiff contends that he met all objective qualifications for the manager positions. For example, as to management experience, Plaintiff emphasizes that "[d]uring his extensive and varied career, [he] served in a management position in which he supervised claims professionals." (Pl.'s Opp'n Br. 12.) With respect to his familiarity handling workers' compensation claims, Plaintiff acknowledges his lack of experience, but highlights his experience with no-fault auto claims, which, according to him, are "very similar." (*Id.* at 13.) In addition, Plaintiff submits that Solovay, a successful candidate for one of the manager positions, had no prior experience with workers' compensation claims. (*Id.*)

Here, Plaintiff failed to provide any evidence demonstrating that he was qualified for either manager position, as well as the requisite knowledge and experience of workers' compensation claims necessary to perform the Manager Claims position. First, Plaintiff does not dispute that, among other objective qualifications, the Manager Treasury job posting required "[s]ix or more years of relevant experience with a <u>strong management background</u>," while the Manager Claims position required "[s]ix or more years of relevant experience with <u>demonstrated leadership opportunities</u>." (Declaration of Tonya B. Braun, Esq. in Support of Def.'s Motion for Summary Judgment ("Braun Decl."), Ex. C at VZBURDGE0000367, ECF No. 40-3 & Ex. D at VZBURDGE0000365, ECF No. 40-4.) In opposition, however, Plaintiff vaguely states only that "[d]uring his extensive and varied career, [he] served in a management position in which he supervised claims professionals." (Pl.'s Opp'n Br. 12.) He further contends that "as a Claims

Consultant responsible for the performance of Verizon's outside [Third-Party Administrator] for the prior 12 years with positive performance reviews, [he] had demonstrated leadership skills in managing others without direct authority or control." (*Id.* at 13.) And while Plaintiff points to no other leadership or managerial experience—despite seeking two positions that expressly required such skills—the record before the Court corroborates the limited nature of Plaintiff's demonstrated leadership abilities. *See Nunn v. NHS Hum. Servs., Inc.*, 110 F. Supp. 3d 554, 566 (E.D. Pa. 2015) (finding no *prima facie* case where strong management experience was an objective job qualification and plaintiff had "limited management experience"). Indeed, Plaintiff admits that he last held a manager position in 1996—more than *twenty years* before the Treasury Transformation—and that he had been rejected for a Verizon Claims manager position in 2013. (Def.'s SOMF ¶¶ 5, 10-12; *see also* Braun Decl., Ex. B, ECF No. 40-2.) Moreover, following his interview of Plaintiff, McCullough expressly noted that Plaintiff "does not demonstrate any leadership competencies." (Def.'s SOMF ¶ 59.) Similarly, Cammarata noted after his interview with Plaintiff that Plaintiff's "managerial/leadership skills and vision are lacking." (Braun Decl., Ex. K at VZBURDGE0000050, ECF No. 40-11.)

Second, it is clear that at least one of the manager positions—the Manager Claims position—required intimate knowledge of workers' compensation claims and Plaintiff, admittedly, had none. In this regard, it is undisputed that, among other objective qualifications, Verizon expressly sought an individual for the Manager Claims position with a "[d]eep knowledge of Workers' Compensation" matters. (Braun Decl., Ex. C at VZBURDGE0000365.) Plaintiff concedes in his opposition to the instant motion, however, that he "lacked prior experience managing workers' compensation claims." (Pl.'s Opp'n Br. 13.) Such a concession—that Plaintiff

12

completely lacked an objective qualification—is fatal to his age discrimination claim as it relates to Verizon's failure to hire him for this particular role.

And while Plaintiff attempts to salvage this portion of his claim by arguing that he had experience with no-fault automobile claims, which according to him are "very similar" to workers' compensation claims, the Court is unpersuaded. Not only does Plaintiff provide no explanation as to how no-fault automobile claims translate to workers' compensation claims, but the Manager Claims position made no mention of no-fault automobile claims. *Martinez v. Quality Value Convenience, Inc.*, 37 F. Supp. 2d 384, 387 (E.D. Pa. 1999) (while establishing a *prima facie* case is not burdensome, it "does not allow a would-be employee to substitute qualifications – however similar – for those an employer has established"). Similarly, to the extent that Plaintiff suggests that Verizon hired Solovay for a manager position in the Claims Group responsible for property claims despite not having any prior experience with such claims, that argument is flawed. As Verizon aptly articulates, unlike the Manager Claims position which required a "deep knowledge" of workers' compensation claims, the Manager Treasury position for which Solovay was selected did not require a "deep knowledge" of property claims. (*See* Ex. A to Pl.'s Opp'n at VZBURDGE367-68.)[2] And, even more critically, Nehil, the candidate ultimately hired for the Manager Claims position, unlike Plaintiff, had the deep knowledge of workers' compensation that the role required. (Pl.'s SOMF ¶ 16; Ex. A to Pl.'s Opp'n at VZBURDGE448-49.)

Accordingly, the Court finds that Plaintiff has failed to state a *prima facie* case of age discrimination under the ADEA or NJLAD as it relates to Verizon's failure to hire him for the manager positions.

---

[2] The Court also notes that Solovay was forty-six years old when Verizon offered him the Manager Treasury position. (Pl.'s SOMF ¶ 84.)

2.   *Claims Consultant Position*

As for the Claims Consultant position, Verizon does not argue that Plaintiff lacked any objective qualifications required for the job. Rather, it argues that no evidence exists in the record demonstrating that the company continued looking for candidates with the same qualifications as Plaintiff after it rejected him. (Def.'s Moving Br. 17-18.) Verizon argues that McCullough was "determined to find a candidate that had the data and technology-related aptitude and experience consistent with the purpose of the Treasury Transformation[,]" and, therefore, he only sought candidates with better qualifications than Plaintiff. (*Id.* at 18.) According to Verizon, McCullough found that experience in the successful candidate, Park, who in addition to "extensive experience working with Verizon's same third-party administrator while at another large company," also had "specific experience utilizing data analytics and predictive modeling." (*Id.*)

Here, the Court disagrees with Verizon's position and finds that Plaintiff has sufficiently demonstrated a *prima facie* case of age discrimination as it relates to Verizon's failure to hire him for the Claims Consultant position. Plaintiff has sufficiently established that he is above the age of forty, that Verizon failed to hire him for the Claims Consultant position, that Plaintiff was qualified for the position, and that Verizon ultimately hired an individual who was sufficiently younger to support an inference of discriminatory animus.[3] Indeed, the Court finds it telling that Verizon does not argue on reply that Plaintiff failed to state a *prima facie* case as it relates to the Claims

---

[3] The Court acknowledges Verizon's reliance on *Lewis v. Cablevision Sys. Corp.*, No. 08-2793, 2010 WL 1133872, at *6 (D.N.J. Mar. 22, 2010), which found that a plaintiff had failed to set forth a *prima facie* case of race and/or sex discrimination because the defendant sought candidates who were more qualified than the plaintiff after rejecting her for an open position. Those claims, however, arose under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, not the ADEA or NJLAD. Moreover, the Court finds the qualifications of Plaintiff and Park, the candidate eventually hired for the Claims Consultant role, similar enough to meet the low bar required for a *prima facie* case.

Consultant role. Thus, mindful that Plaintiff's burden is "not intended to be onerous[,]" *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995), the Court finds that Plaintiff's showing is sufficient to state a *prima facie* case for age discrimination under the ADEA and NJLAD as it relates to the Claims Consultant position.

## B.    Pretext[4]

Even assuming that Plaintiff can establish a *prima facie* case as to the Claims Consultant position or manager positions, Verizon proffers a legitimate, nondiscriminatory reason for not hiring Plaintiff in any of the new positions, *i.e.*, the company selected more qualified individuals, and Plaintiff fails to provide any evidence of pretext. This satisfies the "light" burden Verizon carries "to articulate a legitimate, nondiscriminatory reason for" not hiring Plaintiff. *See Sams v. Pinnacle Treatment Ctrs., Inc.*, No. 18-9610, 2021 WL 2010570, at *5 (D.N.J. May 20, 2021) (quoting *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 937 (3d Cir. 2009)).

In the failure to hire context, it is insufficient for a plaintiff to show that the decision was "wrong or mistaken." *Fuentes*, 32 F.3d at 765. Instead, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence," and "hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Cronin v. Booz Allen Hamilton, Inc.*, No. 18-12642, 2021 WL 1712346, at *9 (D.N.J. 2021) (quoting *Fuentes*, 32 F.3d at 765 (internal quotations and citations omitted)). As such, "it is not this court's role to second-guess an employer's business judgment as

---

[4] The Court notes that it discusses step two and three of the *McDonnell Douglas* framework together because of their overlapping nature.

to who is more qualified for the job." *Dungee v. Ne. Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996).

Rather, to show pretext, Plaintiff must present evidence that Verizon <u>believed</u> Plaintiff was the more qualified candidate. *Id.*; *see also Gardner-Lozada v. SEPTA*, 643 F. App'x 196, 200 n.7 (3d Cir. 2016) (explaining that the Court should defer to an employer's determination as to qualifications absent evidence that "the standard . . . the employer relied on was obviously weak or implausible") (citation and quotation marks omitted). A plaintiff cannot show pretext merely by demonstrating that he has more years of experience or possesses some of the same qualities as the selected candidate. *See Walters v. Norton*, 326 F. App'x 644, 649-50 (3d Cir. 2009) (finding that the hiring of a candidate with twelve years of auditing experience over one with sixteen years of auditing experience was not evidence of pretext). Rather, Plaintiff must show that Verizon's proffered reasons could be found to be "unworthy of credence." *Fuentes*, 32 F.3d at 765. Indeed, in assessing candidates, the employer is not confined to "the existence of baseline requirements[,]" but is free to consider "additional, legitimate qualifications . . . and then decid[e] who is most capable of performing the job." *Dungee*, 940 F. Supp. at 689; *see also Cronin*, 2021 WL 1712346, at *9 (finding no pretext where selected candidates were younger than plaintiff and some had fewer qualifications and less experience than plaintiff, but the managers found them to be more qualified overall based on relevant recent experience and skills that were more closely aligned with the position at issue).

Here, the Court has reviewed the record and concludes that Plaintiff failed to introduce evidence that would lead a reasonable factfinder to find that Verizon's reasons for not hiring him following the restructuring were pretextual and motivated by discriminatory animus. No evidence

exists in the record to suggest that Verizon believed that Plaintiff was more qualified than any of the three candidates selected for the positions in question.

            i.     *Edward Solovay and Derek Nehil (Claims Managers)*

As for the manager positions, Verizon selected Solovay and Nehil. (Def.'s SOMF ¶¶ 67, 76.) Solovay was an internal candidate who—like Plaintiff—was over the age of forty when hired. (*Id.* at ¶ 76.) Prior to being hired for the Manager Treasury position, he had worked in the Claims Group, as well as other groups within Verizon. (*Id.* at ¶¶ 76-77.) This was especially important to the company because it valued connectivity across departments and an understanding of multiple disciplines. Indeed, Cammarata testified that, when making the decision to hire Solovay, he placed an emphasis on Solovay's experience and connections in other parts of the company because that was the type of knowledge of the organization that Verizon desired for the Manager Treasury role. (Cammarata Dep. 193:8 to 194:9, Braun Decl., Ex. J.) Specifically, Cammarata testified that for the Manager Treasury role, which was a "project management-type role,"

> [The successful candidate] needed to have an understanding of the various different organizations in Verizon, because when equipment was damaged, from, let's say, a hurricane, you could be dealing with several different engineering organizations, you could be dealing with VerizonWireless, you could be dealing with Verizon Telecom, you could be dealing with another part [of the company]. So you had to know your way around a little bit. And actually what surprised me about Ed was that I didn't realize [before I interviewed him that] he had a lot of those contacts already.

(*Id.* at 193:10-24.) Further, and perhaps most critically, Solovay possessed the recognized management experience while at Verizon that Plaintiff lacked. To be sure, this included ten years of experience managing teams of Verizon technicians. (Def.'s SOMF ¶ 77.) Finally, unlike Plaintiff, Solovay also had experience with workers' compensation claims and an understanding of how to effectively use technology and data analytics. (Cammarata Dep. 124:21-125:1; Declaration of Madai Gomez Mora in Support of Def.'s Motion for Summary Judgment, Ex. B.)

This experience with technology was particularly important because in addition to management experience, Cammarata and McCullough sought candidates for the manager positions who had experience utilizing technology to enhance claims management through, for example, improved automation, mechanization, and analytics. These were skills that Plaintiff simply did not possess. (*See* McCullough Dep. at 154:2-8, 215:7-13, Braun Decl., Ex. M) (testifying that Plaintiff did not have any experience utilizing technology or data analytics, nor did he suggest ideas as to how technology or more analytics could be used to better manage claims).

Nehil, an internal candidate who was thirty-six years old at the time he was hired for the Manager Claims position, worked as a Claims Consultant for Verizon since 2015. (Def.'s SOMF ¶ 67.) In that capacity, he developed a familiarity with workers' compensation claims in addition to auto and general liability claims. (*Id.* at ¶ 69.) He also gained the supervisory experience that Plaintiff lacked by managing six individuals. (*Id.* at ¶ 68.) According to McCullough, Nehil also had a strong propensity for technology, as evidenced by his ability to analyze spreadsheet data across a large volume of claims, and create efficiencies by identifying which ones needed to be prioritized with individual attention. (McCullough Dep. 152-153; *see also* Nehil Dep. 17-19, Braun Decl., Ex. P.) Specifically, McCullough testified that Nehil consistently used analytics in his role as a Claims Consultant, which Nehil described as "monitoring and development of monthly outcome analysis for the region to identify emerging trends and drive strategy." (Declaration of William McCullough in Support of Def.'s Motion for Summary Judgment, ECF No. 41, Ex. C; McCullough Dep. 150:7-15, 152:8-153:17.)

ii.      *Michael Park (Claims Consultant)*

As for the Claims Consultant position, Verizon hired Park, an internal candidate who was over the age of forty when he was hired. (Def.'s SOMF ¶ 114.) Despite being an external candidate,

18

Park had experience working with Verizon's third-party administrator while working at his previous employer, had extensive experience utilizing data analytics and predictive modeling in the workplace, and even possessed a degree in Computer Science. (*Id.* at ¶ 115.) Indeed, Park's proven track record with technology included exposure to data bots which can be used to automate certain tasks. (*Id.* at ¶ 117.) Specifically, Park understood that data bots could analyze large amounts of data and planned to implement that in connection with the Claims Consultant position. (*Id.*)

Put simply, while Plaintiff may believe that he was as qualified, or more qualified, than each of the other candidates hired by Verizon, Plaintiff's subjective beliefs about his own qualifications do not nullify, nor do they contradict, the evidence supporting those candidates' suitability for the Claims Consultant position or manager positions (*e.g.*, their management and leadership experience, demonstrated abilities using technology to maximize productivity and outcomes, and knowledge and expertise in required disciplines).

Further, to the extent that Plaintiff attempts to establish pretext by disputing the identity of the decisionmakers in each of the hiring decisions, those arguments are equally unavailing. First, with respect to the identity of the decisionmakers, Plaintiff claims that Verizon's assertions about who ultimately decided to reject him for each of the positions changed over time. (Pl.'s Opp'n Br. 8, 14.) As for the manager positions, Plaintiff points to Verizon's 2018 EEOC position statement which claims that Denesevich, Cammarata, and McCullough interviewed Plaintiff, and that they concluded Plaintiff was not qualified for either role. (*Id.* at 15.) According to Plaintiff, that EEOC statement is inconsistent with Verizon's later representations in written discovery that only Cammarata and McCullough were the decisionmakers. (*Id.* at 8-9.) Plaintiff also contends that Cammarata's testimony suggests that he was the sole decisionmaker in the manager process. (*Id.*

at 14.) Plaintiff theorizes that the reason for these inconsistencies is to minimize any damage related to Plaintiff's testimony that he overheard a conversation between Denesevich and Jim Beckert, Verizon's Executive Director/Assistant Treasurer of Pension and Benefits, discussing a candidate's age. (*Id.* at 14-15.) Specifically, Plaintiff testified that in this overheard conversation, Denesevich was "trying to figure out the age of a candidate," and he and Beckert discussed how the age of that unknown candidate would impact Cammarata's decision to hire them.[5] (Pl.'s Dep. at 221:22-222:8.)

Here, the Court finds this evidence presented by Plaintiff cannot support a pretext finding. It is undisputed that Denesevich, Cammarata, and McCullough interviewed Plaintiff, and that Cammarata and McCullough—as the decisionmakers—both concluded that Plaintiff was not qualified. (Def.'s SOMF ¶¶ 52-53; Ex. A to Pl.'s Opp. at VZBURDGE0000017-30, 37-50.) Further, even assuming that there is an inconsistency, and that Denesevich was also a decisionmaker, that does not change the outcome. Indeed, Plaintiff does not suggest that Denesevich came to a conclusion about his candidacy that was contrary to McCullough and Cammarata. Also, as it relates to the conversation overheard by Plaintiff between Denesevich and

---

[5] Moreover, Plaintiff's opposition references comments made by McCullough that he was looking for "new and fresh ideas," as well as recalls examples where Cammarata described Plaintiff as "clinging to the old way" and "resistant to change." (Pl.'s Opp'n Br. 16, 20.) First, the Court finds that these comments are insufficient to demonstrate age animus. Courts have consistently found that a comment about "new blood" does not establish age discrimination on its own. *Perry v. Prudential-Bache Sec., Inc.*, 738 F. Supp. 843, 853 (D.N.J. 1989), *aff'd*, 904 F.2d 696 (3d Cir. 1990) (finding comment that firm needed "new blood" to "mean nothing more than that [defendant] wanted to change employees, whether they be younger or older"); *Hodczak v. Latrobe Specialty Steel Co.*, 761 F. Supp. 2d 261, 271 (W.D. Pa. 2010), *aff'd*, 451 F. App'x 238 (3d Cir. 2011) (noting statement that employer wanted "new blood" was "not necessarily the equivalent of 'young' blood"); *Holshue v. Fanelli Window Pros., Inc.*, No. 04-2769, 2006 WL 680878, at *3 (M.D. Pa. Mar. 16, 2006) ("The phrase 'new blood' does not on its face relate to age."). Second, the Court cannot overlook the fact that despite purportedly making these comments about age, McCullough and Cammarata are both over the age of forty. Indeed, at the time of the comments, McCullough was fifty-nine years old and Cammarata was fifty-eight years old.

Beckert, Plaintiff's recollection of the details of the discussion is noticeably incomplete. For example, he does not know which candidate they were discussing, does not know the age of the candidate, and there is certainly no evidence that Cammarata's decision to hire or not hire the unknown candidate was impacted by the candidate's age. *See Reap v. Cont'l Cas. Co.*, No. 99-1239, 2002 WL 1498679, at *13 n.11 (D.N.J. June 28, 2002) (finding that even if a court were to "assume a degree of inconsistency" between a defendant's EEOC position statement and its subsequent description of a hiring selection process, "a discrepancy between an employer's EEOC position statement and a subsequent explanation offered at summary judgment does not necessarily generate an inference of pretext" because "a plaintiff must point to evidence that demonstrates a reason to disbelieve the employer's explanation.").

Plaintiff offers an even weaker argument as it relates to the Claims Consultant position. There, Plaintiff highlights that although Verizon's 2018 EEOC position statement and written discovery responses provide that Cammarata and McCullough rejected Plaintiff's candidacy, Cammarata and McCullough testified that Cammarata deferred to McCullough in the decision-making process. (Pl.'s Opp'n Br. 8-9.)

Again, the Court does not find any such "inconsistency" exists between Verizon's EEOC position statement and any subsequent statements by Version or evidence elicited in discovery. Rather, the record is clear that Cammarata and McCullough consulted with each other regarding Plaintiff's candidacy, and that as McCullough's superior, Cammarata was involved in the hiring decision. Indeed, Cammarata testified that he and McCullough remained on the fence about Plaintiff's ability to perform the Claims Consultant role "for a while." (Cammarata Dep. at 211:12-14.) McCullough, however, eventually expressed to Cammarata his feelings that Plaintiff should be removed from consideration because he lacked the requisite data analytics skills and did

not share the company's vision in that regard. (McCullough Dep. at 213:3-214:11) (testifying that Plaintiff had not demonstrated an interest in data analytics nor had he interacted with other sectors outside the Claims Group.) In addition, Cammarata and McCullough both testified that Plaintiff had not demonstrated an interest in using technology or data to enhance claims management—a quality that was a priority in their search. (*Id.* at 215:7-13; Cammarata Dep. at 127:2-128:10.) Because Cammarata had no objection to McCullough's assessment, Plaintiff was informed of Verizon's decision to not hire him for the Consultant position. (Pl.'s SOMF ¶¶ 145-46.) Thus, the Court does not find any cognizable discrepancy between Verizon's initial statements in 2018 and any later statements or evidence produced in discovery.

Finally, the Court notes that any attempt by Plaintiff to demonstrate pretext through statistical evidence fails. In this connection, Plaintiff argues that the ages of the employees before and after the Treasury Transformation "bolster the inference of discriminatory bias." (Pl.'s Opp'n Br. 19.) According to Plaintiff, prior to the Treasury Transformation, the average ages of the employees in Risk Management and the Claims Group were fifty-two and fifty-seven years old, respectively. (*Id.*) After the Treasury Transformation, the average ages of the employees in Risk Management and the Claims Group "dropped significantly" to forty-four years of age. The Court is unpersuaded.

First, even statistical evidence of a companywide disparity that relates to the claim at issue is insufficient to rebut a legitimate nondiscriminatory reason for an employer's decision. *Blue v. Def. Logistics Agency*, 181 F. App'x 272, 274 (3d Cir. 2006). Second, Plaintiff admits that even after the restructuring, the average age of the Claims Group was still above the protected age of forty. In fact, within the Claims Group, more than half of the employees hired in connection with the restructuring were over forty years old, including one fifty-eight-year-old candidate (Correa).

Accordingly, since Verizon hired a substantial number of older employees in connection with the restructuring, it is even less likely Plaintiff can demonstrate pretext. *E.E.O.C. v. MCI Int'l, Inc.*, 829 F. Supp. 1438, 1461 (D.N.J. 1993) (finding no pretext when, after the adverse employment action, "four of the five remaining [employees] were in the protected age group" and noting "the sheer numbers belie any inference of age discrimination."); *see also Del Franco v. N.Y. City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 540 (E.D.N.Y. 2006), *aff'd*, 245 F. App'x 42 (2d Cir. 2007) ("Plaintiff's claim that she was discharged because of her age is further weakened by evidence of [the defendant's] continued employment of individuals within the protected age group.").

For the foregoing reasons, Plaintiff's claims under the NJLAD and ADEA cannot survive analysis under the *McDonnell Douglas* burden-shifting framework: whether or not Plaintiff states a *prima facie* case, he simply cannot demonstrate that Verizon's proffered legitimate, non-discriminatory reason for not hiring him was pretextual. Verizon is therefore entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Verizon's Motion for Summary Judgment, (ECF No. 37), is **GRANTED**. An appropriate Order accompanies this Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**